EDWARD C. SINGER, JR. (SBN 226406)
THE LEMBI GROUP LEGAL DEPARTMENT
2099 Market Street
San Francisco, CA 94114
Telephone: (415) 252-4220
Facsimile: (415) 861-2380

Proposed Attorney for Debtors

**FILED**

APR 15 2010

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

Personality Hotels III, LLC

    Debtor

Tax ID 20-8643900

Case No. 10-30804-DM11

Chapter 11

**EMERGENCY MOTION FOR
AUTHORIZATION TO USE CASH
COLLATERAL**

Date: April 16, 2010
Time: 2:30 p.m.
Place: United States Bankruptcy Court
        Courtroom 22
Judge: The Hon. Dennis Montali

    Personality Hotels III, LLC ("Debtor"), debtor and debtor-in-possession in the above-captioned

case, hereby moves this Court on an emergency basis for entry of interim and final orders authorizing

use of cash collateral an granting replacement liens (the "Cash Collateral Motion"). The Cash Collateral

Motion is brought pursuant to 11 U.S.C. §§ 361 and 363 and Federal Rule of Bankruptcy Procedure

4001. The Cash Collateral Motion is based on the discussion below, the concurrently filed declaration

of Yvonne Detert-Lembi, the Introductory Statement and Certification of Compliance with Guidelines re

Cash Collateral Motion (the "Introductory Statement"), the pleadings and papers on file herein, and upon

1 | such further evidence as may be presented prior to or at the time of the hearing on the Cash Collateral
2 | Motion.

## I. INTRODUCTORY STATEMENT

Debtor is the owner and operator of the real property and improvements commonly known as the Hotel Frank located at 386 Geary Street, San Francisco, California and the Hotel Vertigo located at 940 Sutter Street, San Francisco, California . Centerline Servicing, LLC as Special Servicer for Wells Fargo, National Association, in its capacity as Trustee the CRESS 2008-1 Grantor Trust Certificates, Series A ("Centerline") holds a first deed of trust encumbering the Hotel Frank, the Hotel Vertigo, and one other hotel, in the original principal amount of $58,440,000.00. The combined estimated fair market value of the three hotels ranges between $30 million and $35 million.

Centerline asserts an interest in Debtor's post petition revenues based upon an assignment of rents clause in the deed of trust. Debtor seeks authority to use cash collateral for the purpose of paying post petition wages and post petition expenses. Debtor currently owes post petition wages of $95,000.00 and post petition expenses of $78,060.30. Debtor estimates that it will incur further post petition wages of $100,000.00 and post petition expenses of approximately $270,294.00 through April 30, 2010. Centerline's interest in the cash collateral is adequately protected because by continuing the operations of Debtor's business, Debtor will receive additional revenues of $200,000. Debtor seeks interim and final authorization to use cash collateral to pay employee wages and ordinary business expenses through May 31, 2010.

## II. STATEMENT OF FACTS

### A. The Chapter 11 Filing

On March 10, 2010, Debtor filed a voluntary petition with this Court for reorganization under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtor continues to manage and operate its business as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been appointed in the chapter 11 case. A committee of unsecured creditors was appointed on April 8, 2010.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §

Case: 10-30804    Doc# 36    Filed: 04/15/10    Entered: 04/16/10 09:48:16    Page 2 of 5

1    157(b)(2).

2    **B.**    **History of Centerline's Cash Collateral**

3    Centerline has controlled Debtor's ability to pay wages and other expenses since April of 2009,

4 when Debtor and Centerline negotiated a cash management system. Under the "lock box" system, all of

5 Debtor's revenues were swept into an account controlled by Centerline. In order to pay wages and

6 expenses, Debtor submitted to Centerline funding requests. If Centerline approved the requests,

7 Centerline transferred funds to Debtor to make the payments.

8    Since Debtor filed bankruptcy, Centerline has improved it cash collateral position. On the day

9 prior to filing bankruptcy, Centerline held $109,626.00 in Debtor's lock box account. After Debtor filed

10 bankruptcy, Centerline has authorized use of cash collateral to pay pre-petition wages and post petition

11 wages earned between March 10, 2010 and March 31, 2010. Centerline has not authorized use of cash

12 collateral for any post petition expenses despite Debtor's April 6, 2010 request to pay expenses of

13 $78,060.00. In the meantime, Centerline's lock box account has grown to $503,354.25.

14    Centerline has improved its cash collateral position at the expense of Debtor's employees,

15 vendors, and suppliers. Since at least March 22, 2010, Centerline has represented that it would present

16 Debtor with a cash collateral stipulation. Centerline also represented that it would approve payroll and

17 other post petition expenses on an ad hoc basis until such time as the parties entered into a cash

18 collateral stipulation. On Monday, April 5, 2010, Centerline's outside consultants reviewed Debtor's

19 business operation in reliance upon Centerline's representation that such a review was necessary to

20 obtain Centerline's approval of payment of post petition expenses. Apparently, approval of expenses

21 was not the true purpose of the consultant's visit.

22    On April 12, 2010, Centerline informed Debtor that it would not allow use of any cash collateral.

23 Centerline's refusal not only encompasses all of the post petition expenses incurred since Debtor filed

24 bankruptcy on March 10, 2010, but also all of the work performed by Debtor's employees since April 1,

25 2010.

26    Debtor will have to close down the hotel unless it receives money to pay post petition expenses.

27 Some examples are:

28    1.    Debtor's dish network access has been terminated.

Case: 10-30804    Doc# 36    Filed: 04/15/10    Entered: 04/16/10 09:48:16    Page 3 of 5

2. Debtor's boiler has shut down and needs repair.

3. Debtor's light bulb supplier will no longer provide Debtor with replacement light bulbs.

4. Debtor has run out of shampoo for the carpets.

5. Debtor has been cut off by several internet booking sites.

6. Debtor can not pay for pest control services.

More importantly, Debtor's employees will not be paid their wages. Not only will this cause a great hardship to many individuals, it will also lead to a mass exodus by Debtor's long-standing employees.

The closing of the hotel will impact the value of the estate. Debtor has more value to an equity investor as an ongoing business under a successful brand name than it would as a vacant building.

## III. ARGUMENT

**A.    Centerline's Cash Collateral is Adequately Protected by Net Rents and Preservatino of the Ongoing Business Value**

A secured creditor is adequately protected where it receives the indubitable equivalent of its interest in the cash collateral. 11 U.S.C. section 361(3). In making that determination, the court must:

> (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *In re Martin,* 761 F2d 472, 476 (8th Cir., 1985).

As stated above, Centerline has collected the revenues generated as the result of vendors and employees providing goods and services to Debtor since March 10, 2010. However, Centerline refuses to pay for those goods and services.

At least one bankruptcy court has recognized that creation of net rents coupled with the preservation of ongoing business value constitutes adequate protection. In *In re Cardinal Industries, Inc.* 118 B.R. 971, 981 (Bankr. SD OH, 1990), a secured lender asserted a right in the gross revenues of an apartment complex to the exclusion of the debtor's need to maintain the collateral. The court rejected the secured parties argument. The court reasoned "where Lender's interest attached to gross rents, each Debtor's use of such rents to maintain and manage, preserves their values, and produces net rents, provides adequate protection for the Lender's interest." *Id* at 981. In this case, payment of expenses

Case: 10-30804    Doc# 36    Filed: 04/15/10    Entered: 04/16/10 09:48:16    Page 4 of 5

from gross revenues preserves the ongoing value of Debtor's business and produces additional net rents which adequately protect Centerline.

### B. Alternatively, Centerline's Security Interest Should Only Attach to Net Proceeds

Additionally, the court ruled that equity should limit the extent of lender's security interest. The court stated, "if the Court is incorrect regarding the parties' legal rights and remedies of the case, the equities of these cases require that the lenders security interests in the post-petition rents extend only to the portion of those rents not reasonably needed to operate the properties." *Id.* In this case, equity should limit the extent of Centerline's security interest to the revenues generated net of the expenses of vendors and wages of employees whose contributions created those revenues.

## IV. CONCLUSION

Centerline has profited as the result of Debtor keeping its business open since March 10, 2010. Centerline should not profit at the expense of the vendors and employees whose goods and labor have helped Debtor generate that profit. For the reasons above, the Court should grant interim and final relief for use of cash collateral through May 31, 2010.

_____
Edward C. Singer, Jr.
Attorney for Debtor

Case: 10-30804    Doc# 36    Filed: 04/15/10    Entered: 04/16/10 09:48:16    Page 5 of 5