MICHAEL B. LUBIC (SBN 122591)
MICHAEL J. HEYMAN (SBN 218147)
NATHANIEL S. CURRALL (SBN 210802)
K&L GATES LLP
10100 Santa Monica Boulevard, Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Email: michael.lubic@klgates.com
       michael.heyman@klgates.com

Attorneys for Creditor Wells Fargo Bank,
National Association, in its capacity as Trustee
for CRESS 2008-1 Grantor Trust, Series A

EDWARD C. SINGER, JR. (SBN 226406)
THE LEMBI GROUP LEGAL DEPARTMENT
2099 Market Street
San Francisco, CA 94114
Telephone: (415) 252-4220
Facsimile: (415) 861-2380
Email:    esinger@lembigroup.com
Proposed Attorney for Debtors

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Personality Hotels III, LLC,<br><br>        Debtor. | Case No. 10-30804-DM11<br><br>**Chapter 11**<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF STIPULATION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>Date:    May 4, 2010<br>Time:   11:30 a.m.<br>Place:   United States Bankruptcy Court<br>           Courtroom 22<br>Judge:  The Hon. Dennis Montali |

RECYCLED PAPER

NOTICE OF MOTION AND MOTION FOR APPROVAL OF STIPULATION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF

Case: 10-30804   Doc# 53   Filed: 04/30/10   Entered: 04/30/10 14:46:46   Page 1 of 15

| | |
|---|---|
| 1 | **TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY** |
| 2 | **JUDGE; THE UNITED STATES TRUSTEE; AND TO ALL PARTIES IN INTEREST:** |

    **PLEASE TAKE NOTICE** that on or about May 4, 2010 at 11:30 a.m. in Courtroom 22 of the above-referenced court, pursuant to Federal Rule of Bankruptcy Procedure 4001(d), Creditor Wells Fargo Bank, National Association, in its capacity as Trustee for CRESS 2008-1 Grantor Trust, Series A (the "Lender") and Personality Hotel III, LLC (the "Debtor"), will and hereby does move the Court for an order approving the Stipulation for Relief from the Automatic Stay (the "Stipulation") entered into by and between the Lender and the Debtor in the above-captioned chapter 11 case.

    **PLEASE TAKE FURTHER NOTICE** that this Motion is based upon this Notice of Motion and Motion, the accompanying memorandum of points and authorities, declarations in support thereof, the request for judicial notice and such other oral and documentary evidence as may be presented to the Court at or before the hearing on this Motion.

    **PLEASE TAKE FURTHER NOTICE** that the Lender and the Debtor will request an order from the Court for relief from the automatic stay that will take effect immediately, rather than being stayed until the expiration of 14 days after the entry of the order as provided in Federal Rule of Bankruptcy Procedure 4001.

K&L GATES LLP

Dated: April 30, 2010    By: /s/ *Michael J. Heyman*
    Michael B. Lubic
    Nathaniel S. Currall
    Michael J. Heyman
    Attorneys for Creditor Wells Fargo Bank,
    National Association, in its capacity as
    Trustee for CRESS 2008-1 Grantor Trust,
    Series A

THE LEMBI GROUP LEGAL DEPARTMENT

Dated: April 30, 2010    By: /s/ *Edward C. Singer, Jr.*
    Edward C. Singer, Jr.
    Proposed Attorneys for the Debtor

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this Motion, Creditor Wells Fargo Bank, National Association, in its capacity as Trustee for CRESS 2008-1 Grantor Trust, Series A (the "Lender") and Personality Hotel III, LLC (the "Debtor") request that, pursuant to Federal Rule of Bankruptcy Procedures 4001(d), the Court approve the Stipulation for Relief from the Automatic Stay (the "Stipulation") entered into by and between the Lender and the Debtor in this case with respect to the property of the Debtor (the "Property") in which the Lender holds a security interest. A true and correct copy of the Stipulation is attached hereto as Exhibit A. The Stipulation, among other things, permits the Lender to foreclose on the property on May 10, 2010, appoint a receiver and take over operations of the hotel in which the Debtor will no longer have an interest.

## II. BACKGROUND

Centerline Servicing LLC ("Centerline") is the Special Servicer for Wells Fargo Bank, National Association, as trustee for the Beneficial Owner of CRESS 2008-1 Grantor Trust, Series A (the "Lender") pursuant to a Servicing Agreement, dated January 22, 2008, between the Lender and Centerline. Centerline is responsible for servicing loans made by the Lender to Hotel Metropolis II, LLC ("Debtor") and Personality Hotels III, LLC ("Personality") on the following three hotels in San Francisco, California: 386 Geary Street, commonly referred to as the Hotel Frank (the "Hotel Frank"); 940 Sutter Street, commonly referred to as the Hotel Vertigo (the "Hotel Vertigo"); and 25 Mason Street, commonly referred to as The Metropolis Hotel (the "Metropolis") (collectively, the "Hotels"). See Declaration of Michael Pierro ("Pierro Decl.") at ¶2. The Lender is the successor-in-interest to Nomura Credit Capital, Inc. ("Original Lender"), which on March 30, 2007, agreed to loan Debtor and Personality the sum of up to $75,900,000 (the "Loan"). The Loan was evidenced by a Promissory Note A, in the face amount of $58,440,000, and a Promissory Note B, in the face amount of $17,460,000. See Pierro Decl. ¶3, Exhibits A-C.

The Loan is secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "Original Deed of Trust") granting the Original Lender an interest in the Debtor's real and personal property, including equipment, furniture, furnishings, objects of art,

1

RECYCLED PAPER

Case: 10-30804  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF
Doc# 33  Filed: 04/30/10  Entered: 04/30/10 14:46:46  Page 3 of 15

machinery, goods, inventory, tools, supplies, appliances, general intangibles (including, without limitation, payment intangibles), contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of the Debtor. The Deed of Trust further grants lender a security interest in all leases, licenses, tenancies, concessions and occupancy agreements of any or all of the real property and improvements pledged in the Deed of Trust, including Rents as defined therein. The Original Deed of Trust was recorded on March 30, 2007, under San Francisco Recorder's No. DOC-2007-I362913-00. *See* Pierro Decl. ¶4, Exhibit D. The Loan was further secured by an Assignment of Leases and Rents dated March 30, 2007 (the "Assignment of Rents"), granting the Lender a security interest in Leases and Rents as provided therein. *See* Pierro Decl. ¶5, Exhibit E. The Original Lender perfected its interest in all non-real property collateral by filing a UCC-1 Financing Statement with the California Secretary of State on April 5, 2007, under filing no. 07-7109235165. *See* Pierro Decl. ¶6, Exhibit F. On August 27, 2007, the Original Lender, the Debtor, and Personality entered into that certain Mortgage Loan Modification Agreement pursuant to which a portion of the Loan was converted to a mezzanine loan, secured by the membership interests in the Debtor and Personality. *See* Pierro Decl. ¶7, Exhibit G. In conjunction with the modification of the Loan, the Debtor executed an Amended and Restated Promissory Note A (the "Amended Promissory Note A") dated August 27, 2007, in the original face amount of $41,440,000. *See* Pierro Decl. ¶8, Exhibit H. Also in conjunction with the modification of the Loan, the Debtor executed an Amendment to Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Assignment of Leases and Rents, which was recorded on August 25, 2008, under San Francisco Assessor-Recorder No. 2008- I63216-00 (the "Amended Deed of Trust"). *See* Pierro Decl. ¶9, Exhibit I. On January 22, 2008, the Original Lender assigned all of the documents evidencing the Loan to Lender. *See* Pierro Decl. ¶10, Exhibits J-M. Therefore, the Lender holds an undisputed first priority security interest in the Debtor's Property.

The Debtor went into default under the terms of the Loan on or about February 9, 2009. The Payoff Amount, or amount owed, on the Amended Promissory Note A as of March 9, 2010 is $46,386,239.09, plus certain costs, fees and expenses including, without limitation, attorneys fees and consultants fees. The pay off amount, or amount owed, on Promissory Note B as of March 9, 2010 is

$20,121,304.54, plus certain costs, fees and expenses including, without limitation, attorneys fees and consultants fees. In addition, the Lender has made advances to the Debtor in the total amount of $331,387.72 that, pursuant to the terms of the loan documents, must be added to the principal amount of the loan and continue to accrue interest and default interest. The amount of interest and default interest on these advances that has accrued up to and including March 9, 2010 totals $9,910.94. Thus, the total amount owed to the Lender by the Debtor as of March 9, 2010 is approximately $66,848,842.29, plus certain costs, fees and expenses including, without limitation, attorneys fees and consultants fees. *See* Pierro Decl. ¶11, Exhibit N.

In November 2009, Centerline commissioned Cushman & Wakefield to prepare commercial real estate appraisals for each of the three hotels, valuing the properties as of September 14, 2009. *See* Pierro Decl. ¶12. The appraisals found the value of the three hotels, as of September 14, 2009, was $41,300,000. *See* Declaration of Robert F. Farwell ("Farwell Decl."), ¶¶2-5, Exhibits 2-5. In addition, Cushman & Wakefield found that to arrive at a liquidation value, a twenty percent (20%) discount should be applied. *Id.* Therefore, the appraiser found that the liquidation value of the three hotels was $33,040,000. *See* Farwell Decl. ¶5. Thus, it is clear that the Debtors' real property (i.e. the three hotels) are presently worth substantially less than the total amount owed to the Lender and that there is no equity in the properties. *See also* Exhibit A to Request for Judicial Notice attaching Debtors' Bankruptcy Schedules A (Docket No. 1) reflecting a total value of the three hotels as $30,000,000.

The three hotels owned by this Debtor and its affiliated debtor (collectively, the "Debtors") have operated at a loss at least since the beginning of 2008. *See* profit and loss statements from their statements of financial affairs, attached to the Declaration of Michael B. Lubic offered in support of Centerline's Objection to Emergency Motion (Docket #40) (the "Lubic Decl.") as Exhibit "A." The Debtors have not been making debt service payments to Centerline since February 2009. As a result, the Lender commenced a foreclosure sale. The sale was to occur on March 10, 2010 (the "Petition Date"). These Debtors' bankruptcy cases were filed on that date to stay the sale.

Since the Petition Date, the Debtor has been unable to demonstrate to the Bankruptcy Court that the Lender's interest is adequately protected and is unable to provide the Lender with adequate

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF

RECYCLED PAPER

Case: 10-30804    Doc#: 55    Filed: 04/30/10    Entered: 04/30/10 14:46:46    Page 5 of 15

protection because it has no assets to pledge that are not already the Lender's collateral and it has been unable to obtain capital contributions or additional financing. Further, the Lender believes that the Debtor is currently administratively insolvent and that the current cash flow generated by its properties are not sufficient to cover current operating expenses together with appropriate reserves for taxes, insurance and maintenance. As a result, the Lender and the Debtors have reached an agreement have entered into a Stipulation for Relief from the Automatic Stay. *See* Exhibit A, Stipulation.

### III. THE STIPULATION

The Lender and the Debtor have reached an agreement and have entered into a Stipulation for Relief from the Automatic Stay provided for in § 362 of the Bankruptcy Code. See Exhibit A, Stipulation. The Stipulation, among other things, authorizes the Lender to complete the pending foreclosure sale(s) and to seek the appointment of a receiver. The Debtor consents to the appointment of a receiver, including on an ex parte basis and without notice.

The Stipulation further provides that the automatic stay shall be modified immediately upon entry of an order granting this Motion and approving the Stipulation. The order shall provide that any stay of such order under FRBP 4001(a)(3) is expressly waived. The Lender stipulates that it will not commence the foreclosure action until May 10, 2010. The Lender further stipulates that it will consent to the use of its cash collateral to pay allocated wages of employees of affiliates providing services to the Debtor for Reservations, Sales, Accounting and A&G from the Petition Date through the earlier of the appointment of a receiver or a foreclosure sale; such payments will not include payments to any officers of the Debtor. The Stipulation further provides that the Debtor will cooperate in good faith with the Lender in an orderly transition of the operations of the hotel properties owned by the Debtor. Following the foreclosure sale, this bankruptcy case will be converted to a case under chapter 7 of the Bankruptcy Code.

## IV. ARGUMENT

### A. The Stipulation Should be Approved.

The Stipulation should be approved pursuant to Federal Rule of Bankruptcy Procedure 4001(a) because cause exists to grant relief from stay. 11 U.S.C. § 362(d) provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause…; [or]
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>     (A) the debtor does not have an equity in such property; and

11 U.S.C. § 362(d).

In this case, the Debtor filed a chapter 11 petition and has not made a payment to the Lender since February 9, 2009. *See* Pierro Decl. ¶2. The Lender has a deed of trust on the Debtor's real property. *See generally* Pierro Decl. The evidence shows that the Debtors have operated at a substantial loss for over two years; they are unable to make required payments as they come due, including for example, real property taxes on property. The Debtors admit, and the evidence shows, that there is no equity in the Debtors' properties and the Debtors are not funding anyreserves for taxes, insurance or maintenance.

Furthermore, in order to assure a smooth transition of ownership and continued hotel operations, the Lender has already retained hotel management consultants, Provenance Hotel Group (www.provenancehotels.com), who have met with representatives of the Debtor and are ready to immediately begin preparing for the transition. Finally, following the foreclosure sale of the Hotels, this bankruptcy case will be converted to chapter 7. Thus, the Stipulation should be approved and the Court should issue an order granting relief from stay.

### B. Notice of this Motion is Proper.

Adequate notice of this motion is being given to all interested parties. Pursuant to Bankruptcy Rule 4001(a)(3), the Court may determine that the procedures prescribed in paragraphs (1), (2), and (3) of Bankruptcy Rule 4001(d) shall not apply and the Stipulation may be approved without further notice if the Court determines that the Motion for Relief from Stay was sufficient to afford reasonable

5
RECYCLED PAPER
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF
Case: 10-30804  Doc# 53  Filed: 04/30/10  Entered: 04/30/10 14:46:46  Page 7 of 15

notice of the material provisions of the agreement prior to the hearing. The Lender has served this Motion on all parties entitled to notice. Accordingly, the Lender and the Debtor jointly submit that such notice is reasonable to the extent that this Motion and Stipulation embody the material terms of the agreement and provides parties with an opportunity to object and appear at the hearing on this Motion.

## V. CONCLUSION

For the reasons set forth above, the Lender and the Debtor request that the Court approve the Stipulation and grant such other relief as it may deem just and proper.

Respectfully submitted,

K&L GATES LLP

Dated: April 30, 2010         By: /s/ *Michael J. Heyman*
                                  Michael B. Lubic
                                  Nathaniel S. Currall
                                  Michael J. Heyman
                                  Attorneys for Creditor Wells Fargo Bank,
                                  National Association, in its capacity as
                                  Trustee for CRESS 2008-1 Grantor Trust,
                                  Series A

THE LEMBI GROUP LEGAL DEPARTMENT

Dated: April 30, 2010         By: /s/ *Edward C. Singer, Jr.*
                                  Edward C. Singer, Jr.
                                  Proposed Attorneys for the Debtor

# EXHIBIT A

Case: 10-30804    Doc# 53    Filed: 04/30/10    Entered: 04/30/10 14:46:46    Page 9 of 15

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | MICHAEL B. LUBIC (SBN 122591)<br>MICHAEL J. HEYMAN (SBN 218147)<br>NATHANIEL S. CURRALL (SBN 210802)<br>K&L GATES LLP<br>10100 Santa Monica Boulevard, Seventh Floor<br>Los Angeles, California 90067<br>Telephone: 310.552.5000<br>Facsimile: 310.552.5001<br>Email: michael.lubic@klgates.com<br>      michael.heyman@klgates.com<br><br>Attorneys for Creditor Wells Fargo Bank,<br>National Association, in its capacity as Trustee<br>for CRESS 2008-1 Grantor Trust, Series A |

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>Personality Hotels III, LLC,<br><br>      Debtor. | Case No. 10-30804-DM11<br><br>**Chapter 11**<br><br>**STIPULATION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO FRBP 4001(d)**<br><br>Date:    May 4, 2010<br>Time:   11:30 a.m.<br>Place:  United States Bankruptcy Court<br>          Courtroom 22<br>Judge:  The Hon. Dennis Montali |

RECYCLED PAPER

This Stipulation for Relief from Stay (the "Agreement") is hereby entered into by and between Personality Hotels III, LLC, debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor" in the "Case") and Wells Fargo Bank, National Association, in its capacity as Trustee for CRESS 2008-1 Grantor Trust, Series A (the "Lender") with reference to the following facts and recitals:

A. The Debtor commenced this bankruptcy case on March 10, 2010 (the "Petition Date") to prevent a foreclosure sale set for that day.

B. The indebtedness to the Lender is secured by all assets of this Debtor and an affiliated debtor. The Debtor believes that the principal amount of the indebtedness is approximately $58 million and that the aggregate value of the assets securing the indebtedness has a fair market value of approximately $30 to $35 million. The Debtor has admitted that there is no equity in the properties.

C. At the time the case was commenced, the Debtor believed that it had a friendly investor that was close to a deal with the Lender.

D. During the course of the Case, the potential investor has made multiple offers to the Lender, but none have been acceptable. As a result, the Debtor now believes that there are no prospects for a confirmable plan.

E. The Debtor has been unable to demonstrate to the Bankruptcy Court that the Lender's interest is adequately protected and is unable to provide the Lender with adequate protection because it has no assets to pledge that are not already the Lender's collateral and it has been unable to obtain capital contributions or additional financing. The Lender believes that the Debtor is currently administratively insolvent and that the current cash flow generated by its properties are not sufficient to cover current operating expenses together with appropriate reserves for taxes, insurance and maintenance.

F. The Debtor and the Lender wish to avoid the expenses attendant to continuing to operate these properties in bankruptcy, including both the drain on management time and the costs of litigation. As a result, they have entered into this Agreement to provide for an orderly transition of the operations of the Debtor's properties.

1

RECYCLED PAPER

CREDITOR WELLS FARGO BANK, NATIONAL ASSOCIATION'S
STIPULATION FOR RELIEF FROM STAY

Case: 10-30804   Doc# 53   Filed: 04/30/10   Entered: 04/30/10 14:46:46   Page 11 of 15

NOW, THEREFORE, in consideration of the foregoing facts and recitals and the mutual promises and consideration set forth herein, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. **Relief from the Automatic Stay.** The automatic stay provided for in § 362 of the Bankruptcy Code is hereby modified to allow the Lender to pursue any and all of its rights and remedies available under its loan documents or applicable law. Without limiting the generality of the foregoing, the stay is modified to allow the Lender to complete the pending foreclosure sale(s) and to seek the appointment of a receiver. The Debtor consents to the appointment of a receiver, including on an ex parte basis and without notice.

2. **Immediate Effect.** The automatic stay shall be modified immediately upon entry of an order approving this Agreement. The order approving this Agreement shall provide that any stay of such order under FRBP 4001(a)(3) is expressly waived.

3. **Forbearance.** The Lender shall not conduct a foreclosure sale until on or after May 10, 2010.

4. **Use of Cash Collateral.** Upon entry of an order approving this Agreement, the Lender consents to the use of its cash collateral to pay allocated wages of employees of affiliates providing services to the Debtor for Reservations, Sales, Accounting and A&G (the "Allocated Expenses") from the Petition Date through the earlier to occur of the appointment of a receiver or a foreclosure sale. The Allocated Expenses shall not include any compensation to officers.

5. **Cooperation in Transition.** The Debtor agrees to cooperate in good faith with the Lender, its agents and consultants (and, in the event that the Lender is not the purchaser at the foreclosure sale, the purchaser and its agents and consultants) in an orderly transition of the operations of the hotel properties owned by the Debtor. Without limiting the generality of the foregoing, following execution of this Agreement by the parties, the Debtor agrees to start working with Provenance Hotels on transition planning and consents to having personnel from Provenance Hotels on site on as early as May 3, 2010.

6. **Conversion to Chapter 7.** As soon as reasonably practicable following the foreclosure sale, the Lender shall file in the Case a notice that the sale has been completed (the "Lender Notice").

As soon as reasonably practicable following the filing of the Lender Notice, the Debtor shall lodge an order converting the Case to one under chapter 7 of the Bankruptcy Code. Following the filing of the Lender Notice, any party in interest may lodge a conversion order.

7. <u>Court Approval</u>. This Agreement is subject to the approval of the Bankruptcy Court. The parties agree to seek such approval on shortened notice, as expeditiously as reasonably practicable. This Agreement shall be effective immediately upon entry of an order of the Bankruptcy Court approving it.

8. <u>Authority</u>. By signing below, each signatory represents that it has been duly authorized to enter into this Agreement on behalf of the party for whom it is purporting to sign.

9. <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of California and the bankruptcy laws of the United States.

10. <u>Further Assurances/Cooperation</u>. Each party to this Agreement agrees to cooperate in a timely manner with the other parties to carry out the purpose and effect of this Agreement including, without limitation, execution, notarization, and delivery of such other and further instruments, documents and writings as may reasonably be requested to effectuate the terms and conditions of this Agreement.

11. <u>Modifications, Amendments, Waivers and Extensions</u>. Except as otherwise expressly permitted herein, this Agreement may not be modified, amended, or supplemented except by written instrument specifically identifying this Agreement and signed by each of the parties affected thereby and, where applicable, the approval of the Bankruptcy Court. Any party to this Agreement may waive any right, breach, or default which such party has the right to waive, provided that such waiver will not be effective against the waiving party unless it is in writing, is signed by such party, and specifically refers to this Agreement. Waivers may be made in advance or after the right waived has arisen. Any waiver may be conditional. No waiver of any breach of any agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other agreement or provision herein contained. No extension of time for performance of any obligations or acts shall be deemed an extension of the time for performance of any other obligations or acts.

12. **Binding On Successors.** This Agreement is binding on the parties and their heirs, successors and assigns including, without limitation, any trustee(s) who might be subsequently appointed in any bankruptcy case involving any party.

13. **Titles and Headings.** Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

14. **Attorneys' Fees.** Each party agrees to bear its own attorneys' fees and costs in connection with this Agreement; provided, however, that in the event that any party takes legal action with respect to the enforcement of this Agreement, the prevailing party shall recover its costs, fees and expenses related to such action including, without limitation, attorneys' fees.

15. **Interpretation of Agreement.** This Agreement was drafted jointly by the parties. Should any dispute arise concerning the meaning or construction of any term or terms of this Agreement, no part or term of this Agreement shall be construed for or against either as the drafting party.

16. **Counterparts.** This Agreement may be executed in any number of counterparts. All of such counterparts together shall constitute one document at such time as the counterparts are executed, which document shall, in total, contain the signatures of all parties hereto.

DEBTOR:

Personality Hotels III, LLC

Dated: April 30, 2010         By: Signature to follow
                              Its:

LENDER:

By: CENTERLINE SERVICING, LLC, its
Special Servicer

Dated: April 30, 2010         :   By: Signature to follow

4

RECYCLED PAPER
CREDITOR WELLS FARGO BANK, NATIONAL ASSOCIATION'S
STIPULATION FOR RELIEF FROM STAY
Case: 10-30804   Doc# 53   Filed: 04/30/10   Entered: 04/30/10 14:46:46   Page 14 of 15

Approved as to form and content:

K&L GATES LLP


By: /s/ *Michael J. Heyman*
Michael B. Lubic
Nathaniel S. Currall
Michael J. Heyman
Attorneys for Creditor Wells Fargo Bank,
National Association, in its capacity as
Trustee for CRESS 2008-1 Grantor Trust,
Series A


THE LEMBI GROUP LEGAL
DEPARTMENT


By: /s/ *Edward C. Singer, Jr.*
Edward C. Singer, Jr.
Proposed Attorneys for the Debtor


LA-392573 v3